# MERRIMACK,

## DECEMBER TERM, A D. 1852.

---

## BRAGG *v.* NEW ENGLAND MUTUAL FIRE INSURANCE COMPANY.

Where the defendants insured property that was mortgaged, and by a memorandum upon the policy, agreed to pay the amount of the insurance to the mortgagee, in case of loss, with the consent of the mortgager, and the mortgage was afterwards foreclosed, without any act of the mortgager, to whom the policy was issued,—*Held*, that the foreclosure did not work an alienation of the property so as to defeat the policy, and that an action for the loss might be maintained in the name of the assured.

ASSUMPSIT, upon a policy of insurance, issued by the defendants to the plaintiff, on the seventh day of April, 1847, insuring the sum of $2000 on the following property, viz: six hundred dollars on a woollen mill, $900 on machinery and fixtures belonging to the mill, and $500 on the stock in trade employed in and about the mill, and in conducting the plaintiff's business at the mill.

The property was situated at Royalston, in the State of Massachusetts, where the plaintiff resided, and was insured for the term of three years. In his application for insurance, the plaintiff stated that the property was encumbered "by mortgage of $1500,—in case of loss, insurance made payable to B. Peck, attorney for John Prescott, mortgagee;" and at the time of the execution of the policy, the following indorsement was made by the defendants on the margin of the policy, viz: " The within-named sum of two thousand

dollars is made payable, in case of loss, to Benoni Peck, attorney for John Prescott, mortgagee."

The writ was dated May 7th, 1850, and the case came to this court upon an agreed statement of facts. It was admitted, for the purposes of the case, that the property insured was destroyed by fire, November 27th, 1849; that on the 19th day of December following, the defendants received notice in writing of the same, and that the notice was signed by the plaintiff and Benoni Peck, as attorney for John Prescott, and contained the following statement, to wit: " That at the time of effecting the insurance aforesaid, the said mill, machinery and fixtures were owned by said Bragg, subject to a mortgage held by said Prescott. Since that period, the said right of redemption has expired, and the same has become the absolute property of said Prescott. The stock in trade then was, and ever since has been, the property of said Bragg. The mill, and all the other property insured by said policy, has been, and at the time of the fire aforesaid, was in the occupancy of said Bragg." This statement, for the purposes of the case, was admitted to be true, as to the title and situation of the property at the time of the loss.

On the 11th of February, 1850, the defendants sent a notice to the plaintiff, which was received by the course of mail, stating that " at a meeting of the board of directors, held this day, it was voted to reject your claim for loss on policy No. 3719," that being the number of the policy in question.

The premium-note was signed by the said Bragg and Prescott, and assessments were paid by them, and receipts given to them from time to time, the last of which was dated July 15th, 1849. The action was brought in the name of Bragg, with the assent of Prescott and Peck.

The thirteenth section of the act of incorporation of the defendants was as follows: " When any property, insured by this company, shall in any way be alienated, the policy shall thereupon be void, and should be surrendered to the direc-

tors to be cancelled; and upon such surrender the assured is entitled to his deposite-note, upon paying his proportion of all losses and expenses which have occurred prior to such surrender. Provided, however, that the alienee, having the policy assigned to him, may have the same ratified and confirmed to him, upon application to the office, and with the consent of the directors, within thirty days next after such alienation; in which case the assignee will become liable to all the conditions of the original insuree, and shall be required to guarantee the payment of the deposite-note."

No notice of any alienation to Prescott, except that above quoted from the application for insurance, was ever given to the company, and no assignment to Prescott made, other than as above stated.

It was agreed that the case be submitted for the opinion of the court upon the foregoing facts, with a right to a trial by jury, if either party should desire, as to the value of any of the property insured in said policy and destroyed, for the loss of which the court may decide the defendants to be liable in this suit; or as to any other material fact not herein stated; the issues for which, in case the parties do not agree, to be formed by the court.

*Fowler*, with whom was *W. P. Wheeler*, for the plaintiff.

I. The action in this case is well brought in the name of Bragg. Although the defendants agreed, in the margin of the policy, to pay the attorney of Prescott, the mortgagee, yet Bragg alone was a member of the company, and entitled to maintain this action. *Nevins* v. *Rockingham Ins. Co. ante* 22; *Kittridge* v. *Rockingham Ins. Co*, cited in last-named decision as having been previously decided in Rockingham county.

II. There was no such change of circumstances or title in this case, as would .exonerate the defendants from payment of the amount of insurance on the mill, machinery and fixtures.

The contract of insurance was one of indemnity. In case of loss in this case, it was stipulated that the amount of insurance should be paid to the mortgagee, or rather to his attorney. For all the purposes of this contract, Prescott, the mortgagee, was considered and regarded as the owner of the property. He signed the premium-note with the plaintiff, and paid assessments thereon.

The expiration of the period of redemption, whereby the real estate, machinery and fixtures became technically the absolute property of Prescott, made no change in the condition of things unfavorable to the defendants. The same parties continued interested in the property as before, Prescott as absolute owner, and Bragg as tenant and debtor. The mortgage debt was not discharged; the property, by lapse of time, had passed into the absolute ownership of Prescott, but Bragg was as much interested in its preservation, and to have its proceeds applied to the discharge and satisfaction of his debt, as he was when the insurance was effected. *Wilson* v. *Hill*, 3 Metcalf, 66.

Policies of insurance against fire are not deemed, in their nature, incidents to the property insured, but are mere special agreements with the persons insuring, to indemnify them against such loss or damage as they may sustain. *Story*, J. in *Carpenter* v. *Prov. and Wash. Ins. Co.*, 16 Peters 495.

Here the agreement of the defendants was to indemnify Bragg and Prescott, through Bragg, against such loss or damage as they might sustain by fire to the property insured. They have sustained the same loss, in the same way, and both Bragg and Prescott are interested in the same way in the property destroyed, and to precisely the same extent that they were when the property was insured. That extent is the value of the property which Prescott had the same interest to get applied, and Bragg to have applied to the payment of the mortgage debt from Bragg to Prescott, as before the expiration of the right of redemption. There

is, then, no reason why the insurance is not valid. *Wilson* v. *Hill*, 3 Met. 66.

III. The mere expiration of the time of redemption, whereby the legal title of the property had, by operation of law and lapse of time, become absolutely Prescott's, was not an alienation within the meaning of the 13th section of the defendants' charter.

By alienation is understood the transfer of property from one person to another, by their voluntary act or agreement, founded upon a valuable consideration. It is the transfer of land, or other property, by any lawful act of the party, in contradistinction to its disposition by operation of law. 4 Kent's Com. 441. *Burbank, admr.* v. *Rockingham Ins. Co.* 4 Foster's Rep. 550.

The mere expiration of the right of redemption, whereby the property became absolutely Prescott's, was an operation of law alone, and in no proper sense an alienation. It was not a transfer of property by the act of the parties; both parties were passive in the matter; and nothing on the part of Bragg could have prevented the result arrived at, except payment of the mortgage debt, which he was unable to make

IV. The stock in trade upon which the sum of $500 was insured, had not been in any way changed as to its condition or title, but remained as when insured, the property of Bragg, and in his possession. So far as relates to this, then, there is and can be no reasonable pretence of an excuse why the plaintiff should not recover the amount insured.

*Pierce* and *Minot*, for the defendants.

I. It is admitted that the plaintiff alone, not Prescott, the mortgagee, was a member of the company, and that an action on the policy, in this case, can be maintained by him only.

II. The plaintiff and Prescott had distinct and separate interests in the property insured; and the plaintiff was the party intended to be, and actually insured in this case. That

they had distinct and separate interests, we cite, *Traders' Ins. Co.* v. *Roberts*, 9 Wend. 404; *Tyler* v. *Ætna Ins. Co.* 12 Wend. 507; *Kittredge* v. *Rockingham Ins. Co.* and authorities cited.

Besides, Prescott had no interest whatever in the stock in trade insured. That was the plaintiff's unincumbered property. That the plaintiff was the party intended to be, and actually insured, we rely upon the following positions:

1st. The application for insurance was made by him alone, and the policy runs to him alone. And it is admitted that he alone became a member of the company, and that he only can maintain an action on the policy.

2d. The insurance was effected not only on the mill, machinery and fixtures, in which Prescott was interested as mortgagee, but also on the stock in trade in which he never had any interest.

3d. The mortgage to Prescott was for $1500, but the whole amount of insurance effected was $2000.

III. The plaintiff being the party intended to be insured, Prescott cannot claim the benefit of the insurance, although by the terms of the policy his interest might seem to be covered. *Pacific Ins. Co.* v. *Catlett*, 4 Wend. 75; *Carpenter* v. *Prov. Ins. Co.* cited in note to *Wilson* v. *Hill*, 3 Met. 66; *Kittredge* v. *Rockingham Ins. Co.* cited above. None but the parties to the contract can avail themselves of it, although they may have equitable or even legal interests in the property insured. *Carroll & al.* v. *Boston M. F. Ins. Co.* 8 Mass. Rep. 516.

IV. The interest in the insurance did not pass to Prescott with the title to the property. *Wilson* v. *Hill*, 3 Met. 66; *Carpenter* v. *Prov. Ins. Co.* cited in note to above; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385.

And the circumstance that the insurance was made payable to Prescott, in case of loss, cannot operate to continue the policy for his benefit. *Kittredge* v. *Rockingham Ins. Co.* cited above.

V. The insurance to the plaintiff was avoided by the foreclosure of the mortgage to Prescott.

1st. That foreclosure is an alienation within the meaning of section 13 of the defendants' charter. *Jackson* v. *Mass. M. F. Ins.* 23 Pick. 418.

The decisions in *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40, and cases there cited, that the alienations must be voluntary, being on a different phraseology, are not applicable to this case. See same, and section 13 of the defendants' charter.

And further, the execution of the mortgage, which is the basis of all subsequent proceedings in foreclosure, being voluntary, those proceedings consequent on that must be regarded as voluntary. Otherwise, contrary to the decision in *Jackson* v. *Mass. M. F. Ins. Co.* above cited, (23 Pick. 418,) a mortgage and a subsequent entry and foreclosure would not avoid a policy.

The execution of the mortgage, which would be the voluntary part, would not avoid, because that is not an alienation. 23 Pick. 418. And the entry and foreclosure would not, for though an alienation, it might be involuntary on the part of the insured. The decision in the leading case of *Doe* v. *Carter*, 8 T. R. 300, would seem to indicate that the whole proceedings must be involuntary.

2d. Apart from the provisions of section 13 of the defendants' charter, the foreclosure avoids any claim by the plaintiff for the insurance on the property embraced in Prescott's foreclosure. That section creates no new principle, but is merely declaratory of the common law. *Dewey, J.* in *Jackson* v. *Mass. M. F. Ins. Co.* 23 Pick. 425.

At common law, to entitle the plaintiff to recover, he must show an interest in the property insured at the time of the loss. And he can recover only to the extent of that interest, his actual damage. *Shaw*, C. J. in *Wilson* v. *Hill*, 3 Met. 66; *Carpenter* v. *Prov. Ins. Co.* above cited.

At the time of the loss in this case, the plaintiff had no

interest in the mill, machinery or fixtures. By the fore-closure, they had become the absolute property of Prescott. And the mortgage debt thereupon became satisfied *pro tanto*. The plaintiff, therefore, sustained no damage by the loss of that property.

EASTMAN, J.  Upon the first reading of this case, it ap-peared to us very clear that the plaintiff was entitled to re-cover for the loss upon all the property insured; but on perusing the very ingenious argument of the counsel for the defendants, we were led to examine the case with some care before arriving at a conclusion.

When this contract of insurance was entered into, all the facts connected with the property were distinctly set forth in the application, and the insurance was made with a full knowledge of the situation of the property and the interests of the parties.  The application stated that the property was mortgaged for $1500, and that in case of loss the insurance was to be paid to Prescott, the mortgagee.  The defen-dants, also, in issuing the policy, entered upon the margin that the amount insured was, in case of loss, made payable to Prescott.  There was no fraud, no misrepresentation, no deception practised.  Prescott signed the premium-note to-gether with Bragg, and has paid assessments thereon as they have been ordered.  And the foreclosure, and the rights that have passed from Bragg to Prescott, all, in fact, that has transpired between the owners of the property since the issuing of the policy, has been but the legitimate effect of the situation of the property at the time of the insurance. In equity and good conscience, then, there is no reason why the action should not be sustained.  Is there any thing in the legal situation of the parties, or has any thing transpired since, affecting the insurance, that can relieve the defen-dants from their liability to pay the loss that has happened?

With regard to the stock in trade, the insurance upon which was $500, there is no controversy.  But as to the

mill, machinery and fixtures, which were covered by the mortgage, it is said the forceclosure has effected such a change in the ownership of the property as to cancel the policy to that extent. The argument is this: Bragg alone became a member of the company; he only was insured; by the foreclosure the property was alienated, and became absolutely Prescott's; therefore Bragg, having ceased to have an interest in the property, an action upon the policy cannot be maintained in his name.

It is true, that by the terms of the policy, Bragg alone is a member of the company, and a suit for the loss can be maintained only in his name. But it is quite evident that the defendants also made a contract with Prescott, although he may not be a member. An agreement was entered into by them with Prescott, at the request and by the consent of Bragg, by which they were to pay the amount of the insurance to Prescott, in case the property should be destroyed; and Prescott, on his part, signed the premium-note, and has paid assessments thereon as they have been ordered. The insurance, then, was in fact effected in the name of Bragg, for the benefit of both Bragg and Prescott. Instead of making an ordinary policy to Bragg, with no stipulations as to the payment of the money to Prescott, and having the policy assigned, with the consent of the directors, to Prescott, as collateral security for his debt, as is usually done, the company agreed, by their memorandum on the policy, to pay the money over to Prescott in the first instance; and had the property been destroyed before the foreclosure, the defendants could not have successfully resisted an action upon the policy in the name of Bragg, for the benefit of Prescott; for they had contracted to pay the money to him, in case of loss. Thus, although literally speaking, Bragg alone was a member of the company, yet as the property then stood, both he and Prescott were interested in the policy by the agreement of the company itself; and it does not lie in the power of the company to say that they were not, prior to

19

the foreclosure, liable to Prescott, in the name of Bragg. Unless, then, the foreclosure has worked an alienation of the property, within the meaning of the 13th section of the defendants' act of incorporation, this action can be sustained for the loss upon all that was insured.

We had occasion, recently, to consider to some extent the construction to be put upon provisions of this kind, and we held at the last term of this court, in the case of *Burbank* v. *Rockingham M. F. Ins. Co.* 4 Foster's Rep. 550, that the death of the assured intestate, did not work an alienation of the property, and that the policy did not, thereupon, become void. In the opinion given in that case, it was remarked, in substance, that, as understood at common law, to alienate real estate was voluntarily to part with the ownership to it, either by bargain and sale, or by some conveyance, or by gift or will; that alienation was effected by the voluntary act of the owner of the property, and not by operation of law; and that property not transferred or devised is not alienated according to the principles of the common law. To the authorities there cited as sustaining the position, we would add *Strong* v. *The Manufacturers' Ins. Co.* 10 Pick. Rep. 40.

The title which became perfected in Prescott, by means of the foreclosure, was brought about by the operation of law. There was no act of conveyance or transfer by Bragg to Prescott; nothing done by Bragg after the execution of the mortgage and the effecting of the insurance, which gave to Prescott any more rights than those possessed by him when the policy was issued. Bragg did nothing to alienate the property; and the perfection of the title was the mere operation of law, resulting from the situation of the property as it existed at the time of the insurance, and which the defendants might well have foreseen. We cannot, therefore, regard the foreclosure to be an alienation. The title and possession of the property remain in the same persons as

when it was insured; and the rights of Prescott through Bragg still exist.

We think that the defendants must be held liable for the loss upon all the property insured. A different doctrine would avoid a contract, which, so far as it appears, was made in good faith, and which, on the part of Bragg and Prescott, has been kept in good faith.

*Judgment for the plaintiff.*